STATE OF NORTH CAROLINA

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 26CV004298-310

PATIENTPAY, LLC,

          Plaintiff,

v.

EGO, INC., d/b/a BRAULT,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

Plaintiff PatientPay, LLC ("PatientPay"), by and through its undersigned counsel, complaining of Defendant Ego, Inc. ("Ego") (doing business as "Brault") alleges and says the following:

<u>**SUMMARY OF COMPLAINT**</u>

1. This is an action for federal trademark infringement and federal unfair competition under the United States Trademark (Lanham) Act of 1946, 15 U.S.C. §§ 1051 *et seq*. (as amended), and North Carolina law.

2. PatientPay is the creator of a billing and payment outsourcing service for healthcare providers. PatientPay exists to help providers collect more with less effort, and to give patients a payment experience they actually understand and use. Use of PatientPay's services leads to less billing headaches and increases revenue for healthcare providers, while enhancing the patient experience.

3. PatientPay owns multiple federally registered trademarks that it uses to designate and identify its services. See United States Patent and Trademark Office ("USPTO") Reg. Nos. 4131923 and 4474379, claiming PATIENTPAY in connection with International Class 35

Electronically Filed Date: 4/21/2026 3:01 PM Durham Superior Court County Clerk of Superior Court      MR

Case 1:26-cv-00651-UA-JEP    Document 3    Filed 07/09/26    Page 1 of 20

"medical outsourcing services." The USPTO has granted these marks incontestable status under Section 15 of the Lanham Act (15 U.S.C. § 1065).

4. PatientPay also owns multiple common law trademarks and several pending federal U.S. applications, including for PATIENTPAY and PATIENTPAY ACCELERATE services in International Classes 35, 36, and 42. *See* USPTO Ser. Nos. 99322691 and 99322692. Collectively, the registered and unregistered marks are the "PATIENTPAY Marks."

5. PatientPay has used its PATIENTPAY mark (USPTO Reg. No. 4131923) in interstate commerce since at least as early as July 1, 2011, including through advertising and a widely viewed website at [www.patientpay.com](www.patientpay.com), and the PATIENTPAY brand has subsequently earned widespread industry recognition and trust among its customers nationwide.

6. In December 2025, it came to PatientPay's attention that Defendant Ego, Inc., doing business as Brault, was offering medical billing and payment services under the confusingly similar trademark PATIENTONLINEPAY.COM and attempting to secure federal trademark rights in PATIENTONLINEPAY.COM. *See* USPTO Ser. No. 99018112 (the "Ego Application").

7. In response to the Ego Application, the USPTO, on July 7, 2025, issued an Office Action (the "July 2025 Office Action") refusing registration of the PATIENTONLINEPAY.COM trademark on the basis that it infringed PatientPay's pre-existing marks, and expressly notifying Ego that "consumer confusion is likely between the marks notwithstanding the addition of ONLINE to applicant's mark between the identical elements." *See* July 2025 Office Action at p. 5.

8. Despite the USPTO's notification to Ego of its infringement of the PATIENTPAY Marks, and repeated notifications of infringement by PatientPay between January and March 2026,

Ego has willfully continued to infringe PatientPay's trademark rights and failed to reply to PatientPay's most recent cease and desist request.

9. Defendant's usage of the PATIENTONLINEPAY.COM mark is intentionally misleading and creates a likelihood of confusion amongst the relevant public. This likelihood of confusion is harming the reputation and goodwill of PatientPay's brand.

10. In light of this, PatientPay has been compelled to file this action to enforce its rights and defend its brand.

## PARTIES

11. Plaintiff PatientPay, LLC is a Delaware corporation with its principal place of business in Durham, North Carolina that owns the PATIENTPAY Marks.

12. Defendant Ego, Inc. is a California corporation with its principal place of business in San Dimas, California.

13. Ego does business under the name "Brault," and operates in at least 18 states, including North Carolina.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action under N.C. Gen. Stat. § 7A–240.

15. The Superior Court Division is the proper division under N.C. Gen. Stat. § 7A–243 because the amount in controversy exceeds twenty-five thousand dollars.

16. The exercise of personal jurisdiction over Defendant is proper. The Court has personal jurisdiction under N.C. Gen. Stat. §§ 1–75.4(1)(d), 1–75.4(3), and 1–75.4(4)(a), and under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

17. The exercise of personal jurisdiction over Ego is proper because Ego, as Brault, operates a commerce website and otherwise promotes itself and its products in North Carolina so

3

as to induce businesses from North Carolina to purchase its services. The claims in this action arise out of such actions in North Carolina, as Defendant's use of the PATIENTONLINEPAY.COM mark has infringed and continues to infringe upon PatientPay's PATIENTPAY marks, causing injury in North Carolina by damaging the PATIENTPAY marks and causing disruption to PatientPay and its accumulated goodwill. Through these activities directed at North Carolina, Ego possesses such minimum contacts with North Carolina as to subject it to personal jurisdiction in this Court.

18. Further, Ego has entered into a strategic partnership with HaloMD, a company that specializes in independent dispute resolution (IDR) procedures for out-of-network service reimbursement. Ego partnered with HaloMD to provide or to offer to provide IDR services to Brault clients, including those doing business in North Carolina. HaloMD regularly solicits, transacts, and does business in North Carolina, and upon information and belief, has employees located in North Carolina providing or offering to provide IDR services to clients of Brault, including those doing business in North Carolina. Through its partnership with HaloMD, Ego possesses such minimum contacts with North Carolina as to subject it to personal jurisdiction in this Court.

19. Venue is proper in this Court under N.C. Gen. Stat. §§ 1–79 and 1–80 because PatientPay's principal office is in Durham County.

20. As this matter involves trademarks, it is properly designated as a mandatory complex business dispute and is properly designated by PatientPay as subject to the jurisdiction of the Business Court.  N.C. Gen. Stat. § 7A–45.4(a)(4).

4

<u>**FACTS COMMON TO ALL CLAIMS FOR RELIEF**</u>

**A.     PatientPay possesses valid trademark rights in its PATIENTPAY marks.**

21.     PatientPay and its predecessors have been operating in North Carolina since 2009, and in Durham County since 2010.

22.     Since its founding, PatientPay has focused on creating a robust and reliable software platform for medical billing outsourcing. Plaintiff's platform, PatientPay, is used by many clients nationwide to streamline billing and collections for their medical practices. The PatientPay platform is known for being a reputable, high-quality, cutting-edge product.

23.     The PATIENTPAY trademarks have been used continuously in interstate commerce since 2011, along with numerous unregistered uses of the term "PatientPay" protected by common law trademark rights.

24.     PATIENTPAY is a distinctive and recognizable trademark, known throughout the medical billing industry, and beyond, for its impact on improving the financial performance of healthcare practice groups. The PATIENTPAY marks have become associated with effective, reliable billing outsourcing services. The PATIENTPAY marks, therefore, distinguish PatientPay's platform from the myriad other medical billing outsourcing services in the marketplace. The PATIENTPAY marks—and the goodwill associated with them—are an extremely valuable asset to PatientPay.

25.     PatientPay owns multiple valid and incontestable United States trademark registrations for the mark PATIENTPAY.

26.     The United States Patent and Trademark Office has recognized PatientPay's ownership of, and exclusive right to use, the PATIENTPAY trademarks by issuing the following federal trademark registrations on the Principal Register:

5

| Mark | Reg. No. | Class | First Use Date | Reg. Date |
|---|---|---|---|---|
| PatientPay | 4,131,923 | 035 | July 1, 2011 | April 24, 2012 |
| PatientPay | 4,474,379 | 035 | July 1, 2012 | January 28, 2014 |

27. Copies of the registrations of the registered marks are attached hereto as **Exhibit A.**

28. Additionally, the following marks have been submitted for registration and are currently pending before the USPTO. These marks were published for opposition on March 17, 2026. The thirty-day opposition period has since elapsed, and all four marks passed publication without objection.

| Mark | Ser. No. | Class | First Use Date | Filing Date |
|---|---|---|---|---|
| PatientPay | 99322691 | 036 | July 1, 2011 | August 6, 2025 |
| PatientPay | 99322692 | 036 | July 1, 2011 | August 6, 2025 |
| PatientPay Accelerate | 99251613 | 035, 042 | June 10, 2025 | June 25, 2025 |
| PatientPay *Accelerate* | 99254524 | 035, 042 | June 10, 2025 | June 26, 2025 |

29. Copies of the pending applications are attached hereto as **Exhibit B.**

30. The registered PATIENTPAY trademarks have been granted incontestable status by the USPTO. Copies of the certificates of incontestability are attached as **Exhibit C.**

31. The incontestable registration provides conclusive evidence of PatientPay's exclusive right to use its PATIENTPAY trademark in commerce pursuant to 15 U.S.C. § 1115(b), and the registration provides nationwide constructive notice of PatientPay's exclusive rights pursuant to 15 U.S.C. § 1072.

6

32.     Since the date of first use, the PATIENTPAY trademark has been in continuous use and has been used to market PatientPay's medical billing outsourcing services and other related services in United States commerce.

33.     PatientPay prominently displays its PATIENTPAY trademark on its platform, website, and in its marketing and advertising.

**B.      Despite the USPTO's notification to Defendant Ego that its use of PATIENTONLINEPAY.COM infringed PatientPay's rights, it has willfully continued to infringe those rights.**

34.     Ego, Inc., doing business as Brault, is a competitor of PatientPay that offers medical billing and medical billing support services to hospitals and medical groups.

35.     On January 24, 2025, Ego filed a trademark application for PATIENTONLINEPAY.COM  with the USPTO, claiming a first-use date of October 31, 2024.

| Mark | Ser. No. | Class | First Use Date | Filing Date |
|---|---|---|---|---|
| ☑ *PatientOnlinePay*.com | 99018112 | 035 | Oct. 31, 2024 | Jan. 24, 2025 |

36.     A copy of Ego's filed application is attached hereto as **Exhibit D.**

37.     In the July 2025 Office Action (attached as **Exhibit E** hereto), a USPTO Examining Attorney refused registration of the PATIENTONLINEPAY.COM trademark, stating the following:

> Here, Applicant's mark, PATIENTONLINEPAY.COM, is confusingly similar to the registered marks, PATIENTPAY, due to similarities in sound, appearance, and overall commercial impression…. In this case, the marks share the identical wording PATIENT and PAY which renders the marks confusingly similar in sound and appearance and creates a similar overall commercial impression in the context of the respective medical billing services…
>
> Although applicant's mark also contains ONLINE, consumer confusion remains likely with the registered marks… [h]ere, the registered marks are entirely encompassed in the wording of the applied-for mark, including an identical dominant element…. Accordingly, consumer confusion is likely between the marks

7

notwithstanding the addition of ONLINE to applicant's mark between the identical mark elements.

Similarly, .COM in the applied-for mark does not overcome the similar nature of the marks. Generic top-level domains… are generic locators for Internet website addresses and provide no meaningful source-identifying significance… [and are] generally given little weight when comparing marks.

Furthermore, the differences in stylization between the marks does not obviate consumer confusion… although marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar….

Moreover, a mark in typed or standard characters [ ] may be displayed in any lettering style; the rights reside in the wording or other literal element and not in any particular display or rendition…. As such, the stylization of the respective marks do not overcome the similar nature of the marks.

Because the marks look and sound similar and create the same commercial impression, the marks are considered similar for likelihood of confusion purposes.

38. In relation to whether Defendant and Plaintiff operated in the same market space, the USPTO examining attorney found that:

Here, applicant's goods and/or services, "Medical billing; Medical billing support services," are closely related to registrant's goods and/or services, "Medical billing outsourcing services…. Accordingly, the goods and/or services are considered related for purposes of the likelihood of confusion analysis.

39. The USPTO non-final Office Action concluded that:

Because the marks are similar and the services are related, there is a likelihood of confusion as to the source of applicant's services, and registration is refused pursuant to Section 2(d) of the Trademark Act.

40. Ego did not contest the USPTO Examining Attorney's determination and abandoned its application, which the USPTO subsequently declared dead on January 21, 2026. The deadline for Ego to petition to reopen the application expired on March 23, 2026. Despite abandoning its trademark application, and being placed on notice by the USPTO examining attorney that the PATIENTONLINEPAY.COM mark would infringe on the PATIENTPAY marks, Ego disregarded these clear warnings and continued to promote and roll out to new

8

customers its patient portal and bill payment website, which previously had been branded <ERSTATEMENT.COM >. This payment portal website has the PATIENTONLINEPAY.COM mark prominently displayed in a manner designed to be perceived by consumers as a trademark in addition to a web address. A capture of this website is attached as **Exhibit F.**

41. In the months after the PatientOnlinePay.com platform was launched, it received negative feedback from users. In a personal finance forum on the social media website Reddit, one user who received a bill from PatientOnlinePay.com reported that they "tried calling, email, and using their online portal to connect with ANYONE about this bill – and have yet to get through to a human. I'm talking hours on a phone hold every day for the past month. I have also not received follow up bills in the mail." (sic). After finally getting in touch with PatientOnlinePay.com, the same user reported that "It looks sooo sketchy but apparently is legit. It's been impossible to get a hold of them but I did get a response that my bill was denied from insurance because of a coding error….. (sic) latest follow-up was it was still a mess. It's stressful because they aren't keeping in contact with me – I have to keep prompting them…." (sic). In the comments below the post, another user said that they "got the same bill from patientonlineplay (sic) and nervous about paying it the website looks so dodgy." A capture of these posts and comments is attached as **Exhibit G.**

42. Shortly after, on December 29, 2025, PatientPay became aware of Ego's infringing activities. PatientPay, through counsel, sent on January 22, 2026 its first cease-and-desist letter to Ego regarding its infringing usage of the PATIENTONLINEPAY.COM mark. Receiving no response, PatientPay sent a follow-up letter on February 2, 2026.

43. Ego responded through counsel on February 13, 2026, refusing to cease usage of the infringing PATIENTONLINEPAY.COM mark. PatientPay replied to this letter on February

9

23, 2026, and requested a response by March 5, 2026. As of the filing of this complaint, Ego has not responded and continued its willful infringement of the PatientPay Marks.

**C.  Ego's usage of PATIENTONLINEPAY.COM is infringing on PatientPay's PATIENTPAY marks.**

44.  Defendant Ego is using the infringing PATIENTONLINEPAY.COM mark in connection with medical billing services and is thus directly competing with PatientPay.

45.  Defendant Ego is not affiliated with or sponsored by PatientPay and has not been authorized by PatientPay to use the distinctive PATIENTPAY trademark, or any other mark confusingly similar thereto, to identify its products or services.

46.  Ego's claimed the PATIENTONLINEPAY.COM mark incorporates the PATIENTPAY trademark in its entirety, and Ego uses it in connection with sales of identical services and displays it a manner analogous to PatientPay prominently on the banner of its website.

47.  Defendant Ego's adoption and use of the infringing PATIENTONLINEPAY.COM mark for its patient portal and bill payment platform is likely to cause confusion, mistake, or deception among the relevant public as to the source, affiliation, origin, and/or sponsorship of Defendant's platform.

48.  Defendant Ego's adoption and use of the infringing PATIENTONLINEPAY.COM mark is causing and will cause damage and harm to PatientPay and its valuable reputation and goodwill.

49.  Defendant's adoption and use of the infringing PATIENTONLINEPAY.COM mark is causing and will cause disruption to PatientPay's business and operations.

10

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

50. PatientPay repeats and re-alleges each and every allegation above as if set forth herein.

51. U.S. Trademark Registrations Nos. 4,474,379 and 4,131,923 for the PATIENTPAY trademarks are valid and incontestable. By virtue of this registration, the PATIENTPAY trademarks are entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

52. Defendant's use of the infringing PATIENTONLINEPAY.COM mark in commerce is causing and is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's patient portal and bill payment platform in that the public is likely to believe that the platform is provided by, sponsored by, licensed by, affiliated or associated with, or in some other way legitimately connected to PatientPay or its platform offered under the PATIENTPAY trademark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

53. Defendant is committing these acts of infringement with knowledge of PatientPay's prior rights in the PATIENTPAY trademark and with the willful intent to cause confusion and trade on PatientPay's goodwill.

54. The intentional nature of the aforementioned acts of Defendant makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

55. Defendant has profited and has been unjustly enriched by sales and cost savings related to the sale of their medical billing solutions, including its patient portal and bill payment platform, under the infringing PATIENTONLINEPAY.COM mark. Defendant would not have realized these profits and cost savings but for its unlawful conduct, to Ego's gain and Plaintiff PatientPay's detriment.

11

56. PatientPay is entitled to recover damages equivalent to Defendant's profits from the use of the infringing PATIENTONLINEPAY.COM mark, including the cost savings Defendant has realized from its patient portal and bill payment platform.

57. PatientPay is also entitled to interest, costs, and attorneys' fees.

58. As a direct and proximate result of Defendant Ego's conduct, PatientPay is suffering irreparable harm. Specifically, Defendant Ego's conduct is irreparably harming the goodwill and reputation associated with the PATIENTPAY trademark.

59. PatientPay has no adequate remedy at law because the financial harm PatientPay has suffered as a result of Defendant's unlawful conduct is extraordinarily difficult to quantify, if it can be quantified at all.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition (False Designation of Origin))

60. PatientPay repeats and re-alleges each and every allegation above as if set forth herein.

61. Without authorization from PatientPay, Defendant has adopted and continues to use the infringing PATIENTONLINEPAY.COM mark in connection with the advertising and sale of services in such a manner to falsely designate the origin of Defendant's services and confuse the public by suggesting that those services are sponsored by or affiliated with Plaintiff PatientPay, in violation of 15 U.S.C. § 1125(a).

62. Defendant's use of the infringing PATIENTONLINEPAY.COM mark in connection with its patient portal and bill payment platform was done with full knowledge that Plaintiff possesses rights in the PATIENTPAY marks, and that such use was not authorized or licensed by Plaintiff. Defendant has and continues to willfully use the infringing PATIENTONLINEPAY.COM mark with the intent to confuse, mislead, or deceive customers and

12

others as to the origin, source, sponsorship, or affiliation of Defendant's patient portal and bill payment platform, and with the intent to trade on PatientPay's reputation and goodwill.

63. Defendant's acts have a substantial economic effect on interstate commerce because the platform bearing the PATIENTONLINEPAY.COM mark is advertised and sold in interstate commerce, and because Plaintiff's platform bearing the PATIENTPAY marks is also advertised and sold in interstate commerce.

64. Defendant's acts are in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a), and Defendant's use of a trademark identical or confusingly similar to PatientPay's PATIENTPAY trademark constitutes a false designation of origin and unfair competition.

65. Defendant committed these acts of infringement with knowledge of PatientPay's prior rights in the PATIENTPAY trademark and with the willful intent to cause confusion and trade on PatientPay's goodwill.

66. The intentional nature of the aforementioned acts of Defendant makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

67. Defendant has profited and has been unjustly enriched by sales and cost savings related to the sale of their medical billing solutions, including its patient portal and bill payment platform, under the infringing PATIENTONLINEPAY.COM mark. Defendant would not have realized these profits and cost savings but for its unlawful conduct, to Defendant's gain and Plaintiff PatientPay's detriment.

68. PatientPay is entitled to recover damages equivalent to Defendant's profits from the use of the infringing PATIENTONLINEPAY.COM mark, including the cost savings Defendant has realized from their patient portal and bill payment platform.

13

69. PatientPay is also entitled to interest, costs, and attorneys' fees.

70. As a direct and proximate result of Defendant Ego's conduct, PatientPay is suffering irreparable harm. Specifically, Defendant's conduct is irreparably harming the goodwill and reputation associated with the PATIENTPAY trademark. PatientPay will continue to suffer this irreparable harm unless Defendant's conduct is enjoined.

71. PatientPay has no adequate remedy at law because the financial harm PatientPay has suffered as a result of Defendant's unlawful conduct is extraordinarily difficult to quantify, if it can be quantified at all.

### THIRD CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices in Violation of N.C. Gen. Stat. § 75–1.1, *et seq.*)

72. PatientPay repeats and re-alleges each and every allegation above as if set forth herein.

73. Defendant Ego's conduct described above is likely to confuse the relevant public as to the genesis of the goods and services in question, constituting unfair and deceptive trade practices under North Carolina law, including N.C. Gen. Stat. § 75-1.1 *et seq.*

74. Defendant's misconduct is in or affecting commerce.

75. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, prohibits the same type of activity that the Lanham Act prohibits—trademark infringement and false designation.

76. Defendant has committed and is committing acts of infringement with knowledge of PatientPay's prior rights in the PATIENTPAY trademarks and with the willful intent to cause confusion and trade on PatientPay's goodwill.

77. Defendant has also shown an unwarranted refusal to engage in further discussions to resolve this matter.

14

78. Defendant has profited and has been unjustly enriched by sales and cost savings related to the sale of its medical billing solutions, including their patient portal and bill payment platform, under the infringing PATIENTONLINEPAY.COM mark. Defendant would not have realized these profits and cost savings but for its unlawful conduct, to Defendant's gain and Plaintiff PatientPay's detriment.

79. PatientPay is entitled to recover damages equivalent to Defendant's profits from the use of the infringing PATIENTONLINEPAY.COM mark, including the cost savings Defendant has realized from their patient portal and bill payment platform.

80. PatientPay is entitled to trebling of these amounts under N.C. Gen. Stat. § 75–16.

81. PatientPay is also entitled to interest, costs, and attorneys' fees.

82. As a direct and proximate result of Defendant Ego's conduct, PatientPay is suffering irreparable harm. Specifically, Defendant's conduct is irreparably harming the goodwill and reputation associated with the PATIENTPAY trademark. PatientPay will continue to suffer this irreparable harm unless Defendant's conduct is enjoined.

83. PatientPay has no adequate remedy at law because the financial harm PatientPay has suffered as a result of Defendant's unlawful conduct is extraordinarily difficult to quantify, if it can be quantified at all.

**FOURTH CLAIM FOR RELIEF**
**(Common Law Trademark Infringement and Unfair Competition)**

84. PatientPay repeats and re-alleges each and every allegation above as if set forth herein.

85. PatientPay has continuously used the PATIENTPAY trademark in commerce since 2011. Defendant claimed in its trademark application for PATIENTONLINEPAY.COM to have first used the mark in as early as October 31, 2024.

15

86. As a result of PatientPay's substantial advertising and promotional efforts for the PATIENTPAY trademark, as well as its dedication to providing a quality product under the PATIENTPAY brand, PatientPay has created valuable goodwill in the PATIENTPAY trademark. As such, the PATIENTPAY trademark has become associated with PatientPay's product, and has come to symbolize the reputation for quality and excellence of PatientPay's product.

87. Without PatientPay's consent, Defendant has used and is using the infringing PATIENTONLINEPAY.COM mark, which is confusingly similar to the PATIENTPAY trademarks, in connection with the advertising and sales of goods and services in commerce in such a manner as to create a likelihood of confusion among prospective purchasers and others, and to compete unfairly with PatientPay.

88. Such actions were taken by Defendant Ego with actual knowledge of the PATIENTPAY trademark or recklessly by failing to determine PatientPay's rights in the PATIENTPAY trademark. Such action is a willful attempt by Defendant to usurp the goodwill in PatientPay's rights to the PATIENTPAY trademark, and constitutes unfair competition in violation of North Carolina common law.

89. Defendant's unauthorized use of the infringing PATIENTONLINEPAY.COM mark constitutes trademark infringement of the PATIENTPAY trademark under the common law.

90. Defendant has profited and has been unjustly enriched by sales and cost savings related to the sale of its medical billing solutions, including their patient portal and bill payment platform, under the infringing PATIENTONLINEPAY.COM mark. Defendant would not have realized these profits and cost savings but for its unlawful conduct, to Defendant's gain and Plaintiff PatientPay's detriment.

16

91. PatientPay is entitled to recover damages equivalent to Defendant's profits from the use of the infringing PATIENTONLINEPAY.COM mark, including the cost savings Defendant has realized from their patient portal and bill payment platform.

92. PatientPay is also entitled to interest, costs, and attorneys' fees.

93. As a direct and proximate result of Defendant Ego's conduct, PatientPay is suffering irreparable harm. Specifically, Defendant's conduct is irreparably harming the goodwill and reputation associated with the PATIENTPAY trademark. PatientPay will continue to suffer this irreparable harm unless Defendant's conduct is enjoined.

94. PatientPay has no adequate remedy at law because the financial harm PatientPay has suffered as a result of Defendant's unlawful conduct is extraordinarily difficult to quantify, if it can be quantified at all.

## FIFTH CLAIM FOR RELIEF
### (Cybersquatting)

95. PatientPay repeats and re-alleges each and every allegation above as if set forth herein.

96. Defendant Ego has registered and is using a domain name identical to their infringing mark—"PatientOnlinePay.com." This domain name is confusingly similar to PatientPay's PATIENTPAY marks, and usage of the domain is therefore unlawful under 15 U.S.C. § 1125(d).

97. Plaintiff's PATIENTPAY marks were distinctive at the time Defendant registered "PatientOnlinePay.com" domain.

98. Defendant possesses a bad faith intent to profit from its use of a mark that is confusingly similar to PatientPay's PATIENTPAY marks. Defendant Ego made no usage of "PatientOnlinePay.com" prior to PatientPay establishing rights in the PATIENTPAY marks.

17

Defendant has used "PatientOnlinePay.com" for commercial gain. Defendant's usage of the confusingly similar domain name in this manner does not constitute fair use.

99.     Defendant Ego has had no reasonable grounds to believe that use of the infringing "PatientOnlinePay.com" domain name is lawful, especially after repeated notifications from both the USPTO and the Plaintiff that continued use of this domain name would cause or would likely cause consumer confusion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PatientPay prays:

1.     That Defendant and each of their agents, servants, employees, attorneys, officers, and all others in privity and acting in concert with Defendant be permanently enjoined from:

> a.     using the infringing PATIENTONLINEPAY.COM mark or any other trademark or trade name confusingly similar to PatientPay's PATIENTPAY trademarks, in connection with the sale, advertising, promotion, or distribution of any medical billing outsourcing and related services;
>
> b.     using or authorizing to use in any manner any design, trademark, trade name, or combination thereof that imitates, resembles, or suggests the PATIENTPAY trademark;
>
> c.     otherwise infringing the PATIENTPAY trademark;
>
> d.     unfairly competing with PatientPay and otherwise injuring PatientPay's business reputation in any manner; and
>
> e.     other and further infringing conduct as the Court determines in the just and appropriate exercise of its authority;

18

2.      That Defendant Ego be directed to deliver up for destruction all packages, labels, advertisements, promotions, point of sale materials, signs, prints, and all other materials in their possession or under their control bearing the PATIENTONLINEPAY.COM mark;

3.      That Defendant Ego be directed to forfeit the domain name "PatientOnlinePay.com," and to promptly transfer the domain name "PatientOnlinePay.com" to Plaintiff PatientPay;

4.      That Defendant Ego be directed to file with the Court and serve upon PatientPay, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the provisions set forth in Paragraphs 2 and 3 above;

5.      That Defendant account and pay PatientPay damages in an amount equivalent to all the profits and/or costs savings that are attributable to Defendant's use of the infringing PATIENTONLINEPAY.COM mark, and such sums as the Court finds to be just, and further, that the amount of the monetary award granted be trebled in view of the willful and deliberate nature of Defendant's unlawful conduct;

6.      That damages be trebled;

7.      That this be held to be an exceptional case and that Defendant be ordered to pay PatientPay the costs of this action and PatientPay's reasonable attorneys' fees;

8.      That PatientPay's reasonable attorneys' fees be awarded; and

9.      That PatientPay be granted such other and further relief as this Court deems just and proper.

[ SIGNATURE ON FOLLOWING PAGE ]

19

This the 21st day of April, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: _____

Michael W. Mitchell
N.C. State Bar No. 16750
P.O. Box 2611
Raleigh, NC 27602-2611
Telephone: (919) 821-1220
Email: mmitchell@smithlaw.com

*Attorney for Plaintiff PatientPay, LLC*